Juliette P. White (USB# 9616)
Leah C. Schwartz (Admitted *Pro Hac Vice*)
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
JWhite@parsonsbehle.com
LSchwartz@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendant SARAYA USA, INC.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| VALERIE KINMAN,<br><br>Plaintiff,<br><br>vs.<br><br>SARAYA USA, INC. (*d/b/a* LAKANTO),<br><br>Defendants. | **DEFENDANT'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT**<br><br>Case No. 2:26-cv-00062-TC-DAO<br><br>District Judge: Hon. Tena Campbell<br><br>Magistrate Judge: Hon. Daphne A. Oberg |

Pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure and Local Rule DUCivR 7-1, Defendant Saraya USA, Inc. dba Lakanto ("**Saraya**") moves to dismiss with prejudice each claim set forth in the Class Action Complaint (Dkt. 1, the "**Complaint**" or "**Compl.**") filed by Plaintiff Valerie Kinman ("**Plaintiff**").

## TABLE OF CONTENTS


INTRODUCTION AND RELIEF REQUESTED ........ 1

FACTUAL AND PROCEDURAL BACKGROUND ........ 3

LEGAL STANDARD ........ 6

ARGUMENT ........ 7

I. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT THE LAKANTO SWEETENER'S LABELING IS MISLEADING. ........ 7

A. The Front Label Does Not Promise a Substantial, or Any Particular Amount, of Monk Fruit. ........ 8

B. The Back Label Provides Further Evidence that Reasonable Consumers Would Not Be Deceived. ........ 12

II. PLAINTIFF'S STATUTORY AND COMMON LAW CLAIMS ARE PREEMPTED. ........ 14

III. PLAINTIFF'S CONSUMER PROTECTION AND COMMON-LAW CLAIMS SUFFER FROM ADDITIONAL DEFECTS. ........ 18

A. Plaintiff Has Not Alleged Cognizable Injury Under Illinois, Florida, Massachusetts, and New Jersey Law. ........ 18

B. Plaintiff's Unjust Enrichment Claim is Duplicative and Must Be Dismissed Because Plaintiff Has an Adequate Remedy at Law. ........ 20

C. Plaintiff's Negligent Misrepresentation Claim Fails Because There Is No Misrepresentation and the Claim Is Barred By the Economic Loss Doctrine. ........ 21

D. Plaintiff's Express Warranty Claim Fails as a Matter of Law Because There Is No Alleged Affirmative Statement or Promise. ........ 22

E. Plaintiff Did Not Comply With Pre-Suit Notice Requirements. ........ 24

IV. PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF AND BRING CLAIMS UNDER THE LAWS OF STATES WHERE SHE SUFFERED NO INJURY. ........ 26

A. Plaintiff Lacks Standing to Seek Injunctive Relief. ........ 27

B. Plaintiff Lacks Standing to Assert Claims Under the Laws of States Where She Suffered No Injury. ........ 28

V. STATUTORY DAMAGES ARE NOT AVAILABLE FOR PLAINTIFF'S CONSUMER PROTECTION CLAIMS. .......... 30

CONCLUSION .......... 31

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ahmad v. Noem*,
2025 WL 934614 (D. Utah Mar. 27, 2025) .......... 1

*Akers v. Costco Wholesale Corp.*,
631 F. Supp. 3d 625 (S.D. Ill. 2022) .......... 22

*Aprigliano v. Am. Honda Motor Co.*,
979 F. Supp. 2d 1331 (S.D. Fla. 2013) .......... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*Baca v. Colo. Dep't of State*,
935 F.3d 887 (10th Cir. 2019) .......... 28

*Baldwin v. Star Sci., Inc.*,
78 F. Supp. 3d 724 (N.D. Ill. 2015) .......... 23

*Bartosiake v. Bimbo Bakeries USA, Inc.*,
632 F. Supp. 3d 789 (N.D. Ill. 2022) .......... 8, 12

*Beardsall v. CVS Pharmacy, Inc.*,
953 F.3d 969 (7th Cir. 2020) .......... 7, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) .......... *passim*

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) .......... 20

*Bronson v. Swensen*,
500 F.3d 1099 (10th Cir. 2007) .......... 7

*Broodie v. Target Corp.*,
2024 WL 3341342 (M.D. Fla. 2024) .......... 18

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) .......... 18, 19

*Cerretti v. Whole Foods Mkt. Grp., Inc.*,
2022 WL 1062793 (N.D. Ill. Apr. 8, 2022) .......... 24, 25

*Chavez v. Illinois State Police*,
251 F.3d 612 (7th Cir. 2001) .......... 20

*Chen v. Hillsdale Coll.*,
2024 WL 6821096 (W.D. Mich. 2024) .......... 7

*Clark v. Strad Energy Servs., USA, Ltd.*,
2018 WL 3647922 (D. Colo. Aug. 1, 2018) .......... 29

*Cleveland v. Whirlpool Corp*.,
550 F. Supp. 3d 660 (D. Minn. 2021) .......... 20

*Columbian Fin. Corp. v. BancInsure, Inc.*,
650 F.3d 1372 (10th Cir. 2011) .......... 27

*Counts v. Arkk Food Co.*,
2023 WL 7281851 (N.D. Ill. 2023) .......... 24

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .......... 27

*Floyd v. Pepperidge Farm, Inc.*,
581 F. Supp. 3d 1101 (S.D. Ill. 2022) .......... 9, 10

*Franco v. Chobani, LLC*,
2025 WL 1530996 (N.D. Ill. 2025) .......... 1, 17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000) .......... 28

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982) .......... 21

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
130 F.3d 1381 (10th Cir. 1997) .......... 3, 25

*Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*,
2015 WL 12600327 (D. Utah Aug. 31, 2015) .......... 27

*Gociman v. Loyola Univ. of Chicago*,
41 F.4th 873 (7th Cir. 2022) .......... 20

*Grimbaldeston v. Saraya USA, Inc.*,
2025 WL 3677857 (N.D. Cal. Dec. 17, 2025) .......... 5

*Guerrero v. Target Corp.*,
889 F. Supp. 2d 1348 (S.D. Fla. 2012) .......... 20

*Gurrola v. Ford Motor Co.*,
774 F. Supp. 3d 959 (N.D. Ill. 2025) .......... 25

*Halperin v. Int'l Web Servs., LLC*,
123 F. Supp. 3d 999 (N.D. Ill. 2015) .......... 30

*Hamidani v. Bimbo Bakehouse LLC*,
2023 WL 167513 (N.D. Ill. 2023) .......... 10

*Harris v. Topco Assocs., LLC*,
538 F. Supp. 3d 826 (N.D. Ill. 2021) .......... 14

*Hauger v. Dollar Gen. Corp.*,
2022 WL 2532487 (C.D. Ill. July 7, 2022) .......... 10

*Hill v. AQ Textiles LLC*,
582 F. Supp. 3d 297 (M.D.N.C. 2022) .......... 26

*Hill v. Vanderbilt Cap. Advisors, LLC*,
702 F.3d 1220 (10th Cir. 2012) .......... 7

*Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*,
910 F.3d 1186 (11th Cir. 2018) .......... 14

*Hunnicutt v. Zeneca, Inc.*,
2012 WL 4321392 (N.D. Okla. Sept. 19, 2012) .......... 29

*Ibarrola v. Kind, LLC*,
83 F. Supp. 3d 751 (N.D. Ill. 2015) .......... 24

*In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*,
718 F. Supp. 3d 800 (N.D. Ill. 2024) .......... 28

*In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*,
764 F. Supp. 3d 1026 (W.D. Wash. 2025) .......... 20

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prods. Liab. Litig.*,
2023 WL 6121894 (D.N.M. Sept. 19, 2023) .......... 28

*In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
336 F. Supp. 3d 1256 (D. Kan. 2018) .......... 29

*Jones v. Lubrizol Advanced Materials, Inc.*,
559 F. Supp. 3d 569 (N.D. Ohio 2021) .......... 22

*Joseph v. TGI Friday's, Inc.*,
2022 WL 17251277 (N.D. Ill. 2022) .......... 20

*Kan. Penn Gaming v. Collins*,
656 F.3d 1210 (10th Cir. 2011) .......... 6

*Karlinski v. Costco Wholesale Corp.*,
616 F. Supp. 3d 753 (N.D. Ill. 2022) .......... 11

*Kinman v. Kroger Co.*,
604 F. Supp. 3d 720 (N.D. Ill. 2022) .......... 22

*Ledezma v. Upfield US Inc.*,
2022 WL 16553039 (N.D. Ill. Oct. 31, 2022) .......... 13, 14

*Lewis v. Casey*,
518 U.S. 343 (1996) .......... 26

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 27

*Markoff v. Athena Cosms., Inc.*,
764 F. Supp. 3d 733 (N.D. Ill. 2025) .......... 23

*Mundle v. Doxo, Inc.*,
2025 WL 1126646 (W.D. Wash. 2025) .......... 7

*O'Hara v. Diageo-Guinness, USA, Inc.*,
306 F. Supp. 3d 441 (D. Mass. 2018) .......... 18

*Overstreet v. United Parcel Serv. Inc.*,
2025 WL 69189 (D. Utah Jan. 10, 2025) .......... 1

*Phelps v. Hamilton*,
122 F.3d 1309 (10th Cir. 1997) .......... 27

*POM Wonderful LLC v. Coca–Cola Co.*,
573 U.S. 102 (2014) .......... 14

*Pop v. Lulifama.com LLC*,
2023 WL 4661977 (M.D. Fla. 2023) .......... 18

*Red v. Kraft Foods, Inc.*,
2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) .......... 11

*Reyes v. Mcdonald's Corp.*,
2006 WL 3253579 (N.D. Ill. 2006) .......... 24

*Rife v. Newell Brands, Inc.*,
632 F. Supp. 3d 1276 (S.D. Fla. 2022) .......... 19

*Rudy v. D.F. Stauffer Biscuit Co.*,
666 F. Supp. 3d 706 (N.D. Ill. 2023) .......... 23

*Sabo v. Wellpet, LLC*,
250 F. Supp. 3d 332 (N.D. Ill. 2017) .......... 18, 19

*Self v. TPUSA, Inc.*,
2009 WL 273326 (D. Utah Feb. 4, 2009) .......... 30

*Serrano v. Campbell Soup Co.*,
773 F. Supp. 3d 127 (D.N.J. 2025) .......... 29

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017) .......... 18

*Smajlaj v. Campbell Soup Co.*,
782 F. Supp. 2d 84 (D.N.J. 2011) .......... 18

*Smallen v. W. Union Co.*,
950 F.3d 1297 (10th Cir. 2020) .......... 3

*Smith v. Pizza Hut, Inc.*,
2011 WL 2791331 (D. Colo. July 14, 2011) .......... 27, 29

*Stemm v. Tootsie Roll Indus., Inc.*,
374 F. Supp. 3d 734 (N.D. Ill. 2019) .......... 7, 9

*Strow v. B&G Foods, Inc.*,
633 F. Supp. 3d 1090 (N.D. Ill. 2022) .......... 12

*Tandy v. City of Wichita*,
380 F.3d 1277 (10th Cir. 2004) ........ 27

*Thomas v. Metro. Life Ins. Co.*,
540 F. Supp. 2d 1212 (W.D. Okla. 2008) ........ 28

*Thomas v. Metro. Life Ins. Co.*,
631 F.3d 1153 (10th Cir. 2011) ........ 27

*Tomasella v. Nestle USA, Inc.*,
962 F.3d 60 (1st Cir. 2020) ........ 20

*Troutt v. Mondelēz Global LLC*,
637 F. Supp. 3d 606 (S.D. Ill. 2022) ........ 8

*Turek v. Gen. Mills, Inc.*,
662 F.3d 423 (7th Cir. 2011) ........ 14

*United States v. Bame*,
721 F.3d 1025 (8th Cir. 2013) ........ 20

*Valverde v. Xclusive Staffing, Inc.*,
2017 WL 3866769 (D. Colo. Sept. 5, 2017) ........ 29

*Warth v. Seldin*,
422 U.S. 490 (1975) ........ 27

*Weaver v. Champion Petfoods USA Inc.*,
3 F.4th 927 (7th Cir. 2021) ........ 9

*Whiteside v. Kimberly-Clark Corp.*,
108 F.4th 771 (9th Cir. 2024) ........ 13

*Wienhoff v. Conagra Brands, Inc.*,
626 F. Supp. 3d 1015 (S.D. Ill. 2022) ........ 11

*Wilim v. Mondelez Glob. LLC*,
2023 WL 6471999 n.3 (N.D. Ill. 2023) ........ 12

*Willard v. Tropicana Mfg. Co., Inc.*,
577 F. Supp. 3d 814 (N.D. Ill. 2021) ........ 22

*Wilson v. Montano*,
715 F.3d 847 (10th Cir. 2013) ........ 6

**State Cases**

*1410 Grand Adams, LLC v. Trematore Constr., LLC*,
2025 WL 1742859 (N.J. Super. Ct. App. Div. 2025) ........................................................ 22

*Connor v. Marriott Int'l, Inc.*,
231 N.E.3d 375 (Mass. 2024) ............................................................................................... 7

*Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*,
179 Wash. 2d 84, 312 P.3d 620 (2013)................................................................................ 22

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.*,
843 N.E.2d 327 (Ill. 2006) ................................................................................................... 21

*Matthews v. Polar Corp.*,
2023 WL 4534543 (N.D. Ill. Mar. 22, 2023)............................................................... *passim*

*Passatempo v. McMenimen*,
461 Mass. 279, 960 N.E.2d 275 (2012) ............................................................................... 26

*Smith, Allen, Mendenhall, Emons & Selby v. Thomson Corp.*,
862 N.E.2d 1006 (Ill. App. Ct. 2006) .................................................................................. 19

*Valspar Refinish, Inc. v. Gaylord's, Inc.*,
764 N.W.2d 359 (Minn. 2009).............................................................................................. 22

**Federal Statutes**

21 U.S.C. § 343-1 ................................................................................................................... 14

**State Statutes**

810 ILCS 5/2-607(3)(a) ........................................................................................................... 24

815 ILCS 505/1 .......................................................................................................................... 5

815 ILCS 505/10a(a)................................................................................................................. 18

Fla. Stat. Ann. § 501.211(2)...................................................................................................... 18

Fla. Stat. Ann. § 672.313(1)(a) ................................................................................................. 23

Fla. Stat. Ann. § 672.607 .......................................................................................................... 24

Mass. Gen. Laws Ann. ch. 106, § 2-313(1)(a)........................................................................... 23

Mass. Gen. Laws Ann. ch. 106, § 2-607(3)(a) ... 24

Mass. Gen. Laws Ann. ch. 93A, § 9(1) ... 18

Mass. Gen. Laws Ann. ch. 93A, § 9(3) ... 26, 30

Mich. Comp. Laws Ann. § 440.2313(1)(a) ... 23

Mich. Comp. Laws Ann. § 440.2607(3)(a) ... 24

Mich. Comp. Laws Ann. § 445.911(2) ... 30

Mich. Comp. Laws Ann. § 445.911(4) ... 30

Minn. Stat. Ann. § 336.2-313(1)(a) ... 23

Minn. Stat. Ann. § 336.2-607(3)(a) ... 24

N.J. Stat. Ann. § 12A:2-313(1)(a) ... 23

N.J. Stat. Ann. § 56:8-19 ... 18, 19

Wash. Rev. Code Ann. § 62A.2-313(1)(a) ... 23

Wash. Rev. Code Ann. § 62A.2-607(3)(a) ... 24

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) ... 7

**Federal Regulations**

21 C.F.R. § 100.1(c)(4) ... 14

21 C.F.R. § 101.4 ... 12

21 C.F.R. § 101.6 ... 3

21 C.F.R. § 101.9 ... 16

21 C.F.R. § 101.9(c)(6)(iv) ... 4, 16

21 C.F.R. § 101.2(b) ... 15

21 C.F.R § 105.66(b)(2) ... 16, 17

Food Labeling: Front-of-Package Nutrition Information,
90 Fed. Reg. 5426 (proposed Jan. 15, 2025) .................................................................... 3

**Other Authorities**

*Aspartame and Other Sweeteners in Food*, FDA (last updated Feb. 27, 2025) ....................... 1, 17

*High-Intensity Sweeteners*, FDA (last updated May 19, 2014) ............................................... 1, 17

*Reference Amounts Customarily Consumed: List of Products for Each Product Category: Guidance for Industry*, FDA (Feb. 2018) ...................................................................... 3

*What's Erythritol? And Is It Bad for You?*, Cleveland Clinic (Jan. 8, 2025) .............................. 13

## INTRODUCTION AND RELIEF REQUESTED

This case concerns zero-calorie sugar substitutes sold by Saraya in "classic" and "golden" varieties (the "**Lakanto Sweetener**" or "**Products**"). The Lakanto Sweetener contains two ingredients: monk fruit extract and erythritol. Monk fruit is a high intensity sweetener that is 100 to 250 times sweeter than sugar and contains no calories.[1] Erythritol is a type of sugar alcohol, a low-calorie sweetener that is less sweet than sugar.[2] The Lakanto Sweetener is a blend of the two ingredients designed to substitute for sugar in weight, volume, and sweetness. In other words, a consumer may simply substitute a teaspoon of sugar with a teaspoon of Lakanto Sweetener to achieve the same sweetness. And because monk fruit is so intensely sweet, only a small amount need be used to create a one-to-one replacement with sugar. The Lakanto Sweetener is thus a "sugar replacement."

To highlight the presence of erythritol, Saraya truthfully states on the Lakanto Sweetener's label that the product is a MONKFRUIT SWEETENER WITH ERYTHRITOL. But Plaintiff claims that this statement—as well as other representations on the back label about monk fruit's discovery and benefits—while true, misled her to believe the products contain "a substantial amount of monk fruit." This claim is not only implausible, but it is also preempted by federal law.

[1] *See High-Intensity Sweeteners*, FDA (last updated May 19, 2014), https://www.fda.gov/food/food-additives-petitions/high-intensity-sweeteners. Courts are free to consider publicly available guidance published by the FDA in the context of a motion to dismiss. *See Ahmad v. Noem*, 2025 WL 934614, at *3 (D. Utah Mar. 27, 2025) (taking judicial notice of document "published on a government agency's website"); *Overstreet v. United Parcel Serv. Inc.*, 2025 WL 69189, at *9 (D. Utah Jan. 10, 2025) (similar and collecting cases); *see also, e.g.*, *Franco v. Chobani, LLC*, 2025 WL 1530996, at *5 n.11 (N.D. Ill. 2025) (guidance published by FDA can be considered "without converting Chobani's motion into one for summary judgment").

[2] *Aspartame and Other Sweeteners in Food*, FDA (last updated Feb. 27, 2025), https://www.fda.gov/food/food-additives-petitions/aspartame-and-other-sweeteners-food.

As an initial matter, Plaintiff's claim hinges on font sizes and formatting to infer there is a "substantial" amount of monk fruit in the product. But the Lakanto Sweetener's label does not state, or even suggest, that monk fruit is the predominant ingredient. To the contrary, the back label and Nutrition Facts make clear that erythritol is the predominant ingredient (comprising nearly 8 of the 8 grams in each serving). Whether one or more label statements are considered independently or together in context, the Complaint fails to plausibly allege that a significant portion of reasonable consumers could possibly be deceived.

Moreover, the FDA's labeling regulations require food manufacturers like Saraya to make certain disclosures about sugar alcohols. Ignoring that the Lakanto Sweetener's label is subject to *and complies* with these regulations, Plaintiff seeks to impose new labeling requirements that are not required by the FDA—namely, a disclosure of the specific amounts of monk fruit and erythritol in the Lakanto Sweetener. Put differently, Plaintiff challenges a labelling practice that federal law specifically authorizes. Plaintiff's claims are therefore preempted.

Setting these core flaws aside, Plaintiff's Complaint suffers from other defects that require dismissal. The Complaint fails to plead essential elements of Plaintiff's consumer protection, express warranty, and common-law claims. And regardless of whether Plaintiff can seek damages on behalf of putative class members, she lacks Article III standing to pursue injunctive relief. Now that she is aware that the Lakanto Sweetener contains more erythritol than monk fruit, there is no further risk that she will be "deceived." Nor is there a basis for Plaintiff to assert claims brought under the laws of states in which she did not suffer any injury. Finally, Plaintiff seeks statutory damages that are not available to her. The Complaint should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

As prominently declared on the front label, the Lakanto Sweetener is a "MONKFRUIT SWEETENER WITH ERYTHRITOL." *See* Labels for Lakanto Monkfruit Sweetener (Classic) and Lakanto Monkfruit Sweetener (Golden), attached at **Exhibits 1 and 2**.[3] The Products are advertised as a "sugar replacement" with "zero net carbs," denoted by asterisk and described on the back label as "Net Carbs: Subtract Fiber and Sugar Alcohols from Total Carbohydrates per Serving."[4] *Id.* The back of the packaging includes a short passage on the discovery of monk fruit, its perceived benefits, and where Saraya harvests its monk fruit. *Id.* The Ingredients List on the back label states that the Lakanto Sweetener contains "Erythritol, Monk Fruit Extract." *Id.* The Nutrition Facts disclose that a "2 tsp (8g) serving" contains "Total Carbohydrate 8g" and "Sugar Alcohol [i.e., erythritol] 8g."[5] *Id.* The package discloses 8 grams of sugar alcohol, instead of a

---

[3] In deciding a motion to dismiss, courts may consider documents "referred to in the complaint" that are "central to the plaintiff's claim." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir. 1997) (noting that such documents are not "outside the pleading" for purposes of a 12(b)(6) motion); *see also Smallen v. W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020) (similar). The Lakanto Sweetener's labels are the basis of all of Plaintiff's claims and her Complaint references them throughout. *See, e.g.*, Compl. ¶ 22 (providing label images).

[4] FDA research supports the conclusion that reasonable consumers typically review the Nutrition Facts panel as part of the overall package. Nearly 80 percent of U.S. consumers report using back label nutrition facts sometimes or often, with a full 87 percent having looked at such facts at some point. Food Labeling: Front-of-Package Nutrition Information, 90 Fed. Reg. 5426, 5430 (proposed Jan. 15, 2025) (to be codified at 21 C.F.R. § 101.6 (new)).

[5] The Products' serving size is 8 grams because, per the FDA, this is the standard recommended serving size for sugar and sugar substitutes. The FDA provides industry guidance in the form of recommendations for the "Reference Amounts Customarily Consumed" (RACC) for a wide range of foods, including a RACC of 8 grams for sugar and "[a]n amount equivalent to one reference amount for the sugar in sweetness" for sugar substitutes. *See* Reference Amounts Customarily Consumed: List of Products for Each Product Category: Guidance for Industry, FDA (Feb. 2018), https://www.fda.gov/media/102587/download.

more precise amount, because the regulation governing disclosure of sugar alcohols requires only that Saraya state the amount "to the nearest gram." 21 C.F.R. § 101.9(c)(6)(iv).

The Complaint alleges that Plaintiff purchased the Lakanto Sweetener on numerous occasions from stores located in "Ottawa, Peru and Naperville, Illinois." Compl. ¶ 44. She alleges "[b]ased on the Representations"—defined to include text on both the front and back of the packaging, *id.* ¶ 23—that she "believed that the Products contain a substantial amount of monk fruit." *Id.* ¶ 6. Based on her testing, monk fruit comprises "1.15% of the Product composition," such that the "Products are almost completely comprised of erythritol," which she alleges is a "sugar alcohol." *Id.* ¶¶ 52–53. Plaintiff acknowledges that the Ingredients List on the back of the packaging states the Lakanto Sweetener contains "Erythritol, Monk Fruit Extract," but alleges this disclosure "does not remedy or excuse Defendant's misleading Representations." *Id.* ¶ 23 n.2. While the Complaint alleges that Plaintiff viewed the back labels, including the Ingredients List, it omits that the Nutrition Facts immediately adjacent to the Ingredients List disclose there are 8 grams of sugar alcohol (erythritol) in an 8-gram serving. *See id.* ¶ 22. The "substantial" amount of monk fruit Plaintiff nevertheless believed to be in the Products is nowhere defined in the Complaint.

Plaintiff does not dispute that the Lakanto Sweetener contains monk fruit nor does she allege that any label statement is untrue. Instead, her claims are based on what Plaintiff inferred, i.e., Plaintiff's alleged impression that the amount of monk fruit is "substantial," despite the fact that the Labels do not state that monk fruit comprises a certain percentage or amount of the Products or is even the predominant ingredient. *Id.* ¶ 7. Plaintiff alleges that monk fruit is a "premium sweetener that is derived from a natural source: monk fruit," while erythritol is allegedly

"a chemically processed sugar alcohol." *Id.* ¶ 5-6. Despite this admitted understanding that monk fruit is not a sugar alcohol, and despite a clear disclosure in the Nutrition Facts that the product contains 8 grams of sugar alcohol in an 8-gram serving, Plaintiff nonetheless alleges that she was deceived into thinking there was a "substantial" but unspecified amount of monk fruit in the product.

The Complaint alleges that had Plaintiff known "at the time of purchase that the Representations were false and misleading, Plaintiff would not have purchased the Products or would have paid less for them." *Id.* ¶ 57. Seeking to represent a multi-state consumer class of purchasers from Illinois, Florida, Massachusetts, Michigan, Minnesota, New Jersey, and Washington, Plaintiff asserts the following claims: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("**ICFA**"), 815 ILCS 505/1, et seq. (for Plaintiff and the Illinois Subclass); (2) violation of consumer fraud/consumer protection acts from other states; (3) breach of express warranty; (4) negligent misrepresentation; and (5) unjust enrichment. Plaintiff brings Counts (2)–(4) on behalf of "Plaintiff and the Multi-State Consumer Protection Class or, in the alternative, the Illinois Subclass."

This lawsuit was initiated in the Northern District of Illinois. Dkt. 1. Saraya moved to dismiss or, in the alternative, to transfer the case to the District of Utah. Dkt. 22. In response, Plaintiff filed her own motion to transfer the Illinois Action to the Northern District of California.[6]

[6] Roughly one hour before Plaintiff filed the Illinois Action, Plaintiff's counsel filed a similar class action against Saraya on behalf of a purported California class, which action Saraya is currently seeking to transfer to this District. *Grimbaldeston v. Saraya USA, Inc.*, Case No. 25-CV-05649-RFL (N.D. Cal. July 3, 2025) (the "**California Action**"). The possibility of transfer need not delay resolution of Saraya's Motion. And, although the consumer protection claims in the California Action recently survived a motion to dismiss, *Grimbaldeston v. Saraya USA, Inc.*, 2025 WL 3677857 (N.D. Cal. Dec. 17, 2025), that ruling does not preclude dismissal here. That non-binding

Dkt. 26. Eventually, the Court agreed with Saraya that transfer to Utah will best serve the convenience of the parties and witnesses and the interests of justice. Dkt. 46 at 9–11. Upon transfer to this Court, Saraya was granted leave to renew its motion to dismiss. Dkt. 54.

## LEGAL STANDARD

Defendant moves to dismiss Plaintiff's claims under Rule 12(b)(6) or in the alternative under Rule 12(b)(1). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must have "enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "[t]he plausibility standard is not akin to a probability requirement, it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). In other words, a complaint cannot pass muster under Rule 12(b)(6) if it does not allow the district court "to infer more than the mere possibility of misconduct." *Id*. at 679. In reviewing the pleadings, the court accepts as true the well-pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff. *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013). But the "plaintiff must offer specific factual allegations to support each claim." *Collins*, 656 F.3d at 1214; *see Iqbal*, 556 U.S. at 678 (rejecting legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

---

decision is based on the laws of California, which materially differ from the controlling law of Illinois.

Likewise, the "plaintiff must have standing to seek each form of relief in each claim." *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007). Courts review standing arguments under Rule 12(b)(1) to ensure the existence of a live case or controversy. Fed. R. Civ. P. 12(b)(1) (subjecting complaints to dismissal for "lack of jurisdiction over the subject matter"); *Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012) ("[S]tanding [is] an element of subject matter jurisdiction.").

## ARGUMENT

### I. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT THE LAKANTO SWEETENER'S LABELING IS MISLEADING.

Plaintiff's consumer protection claims (Counts I and II) all allege some variation of a deceptive act or misrepresentation. To establish such claims, Plaintiff must plausibly allege that Saraya's representations on the Products' labeling "are likely to deceive reasonable consumers." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020); *see also Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019) ("Courts apply a 'reasonable consumer' standard in evaluating the likelihood of deception.").[7]

[7] Plaintiff's Complaint glosses over considerable nuance under the state law of the half-dozen states comprising the alleged multi-state class. Compl. ¶ 132 ("The Consumer Fraud Acts and Consumer Protection Statutes of States comprising the Multi-State Consumer Protection Class (the 'Statutes') are substantially similar and prohibit the use of unfair and/or deceptive business acts and practices in the conduct of commerce."). For purposes of this Motion, however, Saraya agrees that the "reasonable consumer" standard governs these claims. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (noting that the consumer protection statutes of "twelve different states," including Florida, Illinois, Michigan, and New Jersey, all employed a "reasonable consumer" standard); *Bell*, 982 F.3d at 474–75 (declaring that Florida, Illinois, Minnesota, and New Jersey all follow the same consumer protection standard); *see also Connor v. Marriott Int'l, Inc.*, 231 N.E.3d 375, 383 (2024) (Massachusetts); *Chen v. Hillsdale College*, 2024 WL 6821096, at *13 (W.D. Mich. 2024), *aff'd sub nom. Chen v. Hillsdale Coll.*, 2025 WL 2472965 (6th Cir. 2025) (Michigan); *Mundle v. Doxo, Inc.*, 2025 WL 1126646, at *4 (W.D. Wash. 2025) (Washington). Thus, if Plaintiff's ICFA claim is dismissed, the claims based on other state

The reasonable consumer standard requires more than a "mere possibility that a label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Troutt v. Mondelēz Global LLC*, 637 F. Supp. 3d 606, 614 (S.D. Ill. 2022) (citation omitted). The plaintiff must show "a *probability* that a *significant portion* of the general consuming public or of targeted consumers, *acting reasonably* in the circumstances, could be misled" by the relevant label. *Bell*, 982 F.3d at 474–75 (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972−73 (7th Cir. 2020) (emphasis added)). In making this determination, courts consider the totality of the information available to consumers and "the context in which that information is provided and used." *Id.* at 477. While this is often a fact-intensive inquiry, dismissal is appropriate for claims based on "unreasonable or fanciful interpretations of labels or other advertising." *Id.* at 477–78 (collecting cases).

Such is the nature of the allegations here. Plaintiff's consumer protection claims rest on unreasonable and selective interpretations of the Lakanto Sweetener's label that otherwise ignore Plaintiff's own factual allegations. The front label does not promise any particular amount of monk fruit—a conclusion bolstered by the context provided on the back label. And the label as a whole tells Plaintiff everything she needs to know about the composition of the Products.

### A. **The Front Label Does Not Promise a Substantial, or Any Particular Amount, of Monk Fruit.**

This case is not analogous to those in which an advertised ingredient is not present in the challenged product because Plaintiff admits that the Lakanto Sweetener contains real monk fruit. *See, e.g.*, Compl. ¶ 23. Instead, Plaintiff's theory of deception rests on an unsupported inference.

---

consumer fraud acts must also be dismissed. *See Bartosiake v. Bimbo Bakeries USA, Inc.*, 632 F. Supp. 3d 789, 796 (N.D. Ill. 2022).

That is, she alleges the font size and formatting of the phrase "MONKFRUIT SWEETENER WITH ERYTHRITOL" suggests that there is a "substantial" (but undefined) amount of monk fruit in the product, without explaining whether she is referring to the amount of this high intensity sweetener by weight, sweetness, volume, or some other metric. Compl. ¶¶ 7, 23 n.2, 27, 52, 117. Such vague allegations otherwise premised on unsupported inferences necessarily fail.

As an initial matter, "[a] statement or label cannot mislead unless it actually conveys untrue information about a product." *Stemm*, 374 F. Supp. 3d at 740; *see also Matthews v. Polar Corp.*, 2023 WL 4534543, at *8 (N.D. Ill. Mar. 22, 2023) ("Without a representation, there is no misrepresentation."). This is particularly true for consumer protection claims that interpret a statement about an ingredient's mere presence as a guarantee of its exclusivity or predominance. *Matthews*, 2023 WL 4534543, at *8–9 (collecting cases); *see also Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 937 (7th Cir. 2021) ("Several district courts have held that references to ingredients used do not imply that ingredient is used exclusively."); *Floyd v. Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1109 (S.D. Ill. 2022) ("The crackers . . . contained butter; therefore, the use of the word 'butter' is descriptive and not false, misleading or fraudulent.").

In *Matthews*, defendant's seltzer water prominently used the word "lemon," which was highlighted yellow in all capitals as "**LEMON**." 2023 WL 4534543, at *2. The label also included pictures of lemon wedges and described the product as "100% NATURAL SELTZER." *Id.* Plaintiff claimed that this "lemon" label was misleading because the product "lack[ed] the *amount* and *type* of lemon ingredients expected by Plaintiff and consumers." *Id.* at *3 (emphasis in original). But claims about the amount of lemon failed for a "simple reason":

> Polar did not make any representations about the amount of lemon in each can. So Matthews cannot bring a misrepresentation claim about the amount of lemon in

> each can. She can't bring a misrepresentation claim about a representation that isn't there. There is a big difference between saying "lemon" and saying "this product contains X amount of lemon." The former is an attribute, and the latter is an amount. The presence of something is different than the amount of something. It is the difference between "what" and "how much." No reasonable consumer would confuse the two.

*Id.* at *7; *see also Hamidani v. Bimbo Bakehouse LLC*, 2023 WL 167513, at *3 (N.D. Ill. 2023) ("Packaging that merely depicts or asserts the presence of an ingredient typically cannot lead a reasonable consumer to conclude that the product contains a certain amount of that ingredient." (collecting cases)). The same logic applies here.

The front label of the Lakanto Sweetener says nothing about the amount of monk fruit in the Products. Ex. 1–2. Like the seltzer water in *Matthews*, Saraya's label states only a true attribute otherwise admitted by Plaintiff—that the Lakanto Sweetener contains both monk fruit and erythritol. The label does not say "100% Monkfruit Sweetener" or "Substantially Sweetened with Monkfruit." In other words, Plaintiff's claims rest on a "mere reference to an ingredient that is, in fact, an ingredient[.]" *Matthews*, 2023 WL 4534543, at *7. That "MONKFRUIT SWEETENER" is displayed in larger font than "WITH ERYTHRITOL" is of no moment. Courts routinely dismiss claims that imply predominance based on font size. *See, e.g.*, *Floyd*, 581 F. Supp. 3d at 1109 (predominant use of the word "BUTTER" in all caps and larger font did not convey any untrue statements because the product indeed contained some butter); *Hauger v. Dollar Gen. Corp.*, 2022 WL 2532487, at *4 (C.D. Ill. July 7, 2022) (dismissing claim when label allegedly implied graham flour was primary ingredient—including by putting "Graham" in a bigger font than any other word—because the product contained graham flour and did not indicate graham flour was a predominant ingredient).

At best, this is a case where the consumer is "read[ing] a true statement on a package" and then "assum[ing] things about the products other than what the statement actually says." *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012). But "[c]onsumers cannot impose content that isn't there, and impute meaning that is not fairly derived from the labeling itself." *Matthews*, 2023 WL 4534543, at *9. Similar to how it is unreasonable for a plaintiff to be deceived into thinking a box of crackers referencing vegetables contains mostly vegetables—it is unreasonable to assume that consumers will be deceived into thinking the Lakanto Sweetener contains a significant amount of monk fruit. *Red*, 2012 WL 5504011, at *3 ("Made with Real Vegetables" label on box of crackers could not reasonably mean crackers were "composed of primarily fresh vegetables"); *see also Wienhoff v. Conagra Brands, Inc.*, 626 F. Supp. 3d 1015, 1026 (S.D. Ill. 2022) ("[I]t is fanciful that reasonable consumers will be deceived into thinking that pudding," whose label states "Made with Real Milk" and depicts a bottle of overflowing milk, "contains a significant amount of milkfat"). Indeed, Plaintiff's claims are even further afield from these examples; unlike *Red*, *Wienhoff*, and *Matthews*, the Lakanto Sweetener's label does not include any images of monk fruit.

Moreover, the Court need not accept Plaintiff's conclusory allegation as to what a reasonable consumer would infer from the Lakanto Sweetener's label. *Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 762 (N.D. Ill. 2022). The Complaint does not even explain what Plaintiff believes constitutes a "substantial amount of monk fruit," whether by weight, sweetness, volume or some other metric, let alone what a reasonable consumer believes. Compl. ¶ 7. Plaintiff does not cite or attach any consumer surveys or research regarding consumer beliefs and understandings. *Bartosiake v. Bimbo Bakeries USA, Inc.*, 632 F. Supp. 3d 789, 795 (N.D. Ill.

2022) (dismissing ICFA claim where plaintiffs failed to allege facts supporting allegations that a reasonable consumer would view the phrase "Chocolate Fudge Iced Cake" as a specific ingredient or recipe). Counts I and II should be dismissed.

### B. **<u>The Back Label Provides Further Evidence that Reasonable Consumers Would Not Be Deceived.</u>**

Plaintiff pleads that she herself reviewed—and therefore all other reasonable consumers like her would also review—the back label. *See, e.g.*, Compl. ¶¶ 23(iii)-(v). While the "front and the back of consumer packaging are not created equal," *Matthews*, 2023 WL 4534543, at *3 n.1, "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Bell*, 982 F.3d at 477. In other words, the entire label, not just select portions, should be considered in determining whether a label is misleading. *See id.*; *Strow v. B&G Foods, Inc.*, 633 F. Supp. 3d 1090, 1101 (N.D. Ill. 2022) (district court entitled to consider statements on the back of the label when analyzing whether claim is deceptive). And the entire label *must* be considered when the plaintiff herself relies on the back label to support her claims.

A review of the Lakanto Sweetner's back label confirms that dismissal is justified. The Ingredients List clarifies that monk fruit is *not* the primary ingredient. In fact, it discloses erythritol first, *see* Ex. 1–2, which reasonable consumers understand to mean that ingredient predominates. 21 C.F.R. § 101.4; *see Wilim v. Mondelez Glob. LLC*, 2023 WL 6471999, at *5, *5 n.3 (N.D. Ill. 2023). And the Nutrition Facts clearly state that an 8-gram serving size contains 8 grams of sugar alcohol, which reasonable consumers understand to mean something other than monk fruit (if not

erythritol). In other words, approximately 8 grams of each 8-gram serving is not monk fruit but instead the other advertised and listed ingredient (erythritol).[8]

Plaintiff's reliance on the back-label descriptions of monk fruit's health benefits does not save her claim. There is nothing in these statements to support Plaintiff's "substantial" monk fruit understanding. *See Matthews*, 2023 WL 4534543, at *3 (rejecting the contention that word "'natural' includes some kind of guarantee that each can of water contains a certain amount of lemon"); *Ledezma v. Upfield US Inc.*, 2022 WL 16553039, at *5 (N.D. Ill. Oct. 31, 2022) (representations extolling the benefits of olive oil—*e.g.*, "Simple Ingredients," "Good Fats from Plant-based Oils," and "Contains Omega-3 ALA"—do not suggest "a non-de minimis and/or predominant amount of olive oil"). The back of the packaging includes only a short passage on the discovery of monk fruit, its perceived benefits, and where Saraya harvests its fruit. Ex. 1–2. None of this represents the amount of monk fruit or contradicts the clear statements that the product contains erythritol.

---

[8] This ingredient composition makes sense. Per published FDA guidance, monk fruit is a high-intensity sweetener (far sweeter than table sugar), meaning a little monk fruit goes a long way—particularly when the desired and advertised product is a 1:1 sugar replacement. Saraya draws consumer's attention to this fact through the asterisk on the phrase "zero net carbs." *See* Ex. 1–2. This in turn points to the calculation of net carbs on the back label, which reveals that the product contains a larger proportion of less-sweet "sugar alcohol" to serve as a 1:1 sugar replacement that is also "keto friendly." *Whiteside v. Kimberly-Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024) ("[T]he presence of an asterisk alone puts a consumer on notice that there are qualifications or caveats[.]") While the word "erythritol" is not expressly identified in the "sugar alcohol" disclosure, the Complaint makes clear that a reasonable consumer would know that erythritol is a sugar alcohol. In fact, the Complaint relies on a "study" which states "[e]rythritol is a kind of artificial sweetener known as a sugar alcohol." *What's Erythritol? And Is It Bad for You?*, Cleveland Clinic (Jan. 8, 2025), https://health.clevelandclinic.org/erythritol; *see* Compl. ¶¶ 40–42 (citing https://health.clevelandclinic.org/erythritol).

In sum, the Products' label makes no objective statement about the amount of monk fruit. Instead, it identifies erythritol as the primary ingredient and otherwise invites consumers to learn more about the Products' status as a sugar replacement by reading the label in its entirety—as the Plaintiff did. Compl. ¶ 23. On these facts, Saraya's labeling "front, back, or otherwise - contain[ed] no ambiguity potentially deceptive to a reasonable consumer" and did "not even obliquely suggest that the product contain[ed] a particular amount of [monk fruit], let alone the unspecified greater amount of [monk fruit] expected by [Plaintiff]." *Ledezma*, 2022 WL 16553039, at *5.

## II. PLAINTIFF'S STATUTORY AND COMMON LAW CLAIMS ARE PREEMPTED.

The Nutrition Labeling & Education Act ("**NLEA**") includes a broad express preemption provision that provides no state "may directly or indirectly establish . . . any requirement for the labeling of food of the type" regulated by federal law "that is not identical to the [federal] requirement." 21 U.S.C. § 343-1; *see POM Wonderful LLC v. Coca–Cola Co.*, 573 U.S. 102 (2014) (explaining that the Federal Food, Drug, and Cosmetic Act ("**FDCA**") "prohibits the misbranding of food and drink"). A state-law requirement is "not identical to" a federal requirement where "the State requirement directly or indirectly imposes obligations or contains provisions [that] . . . [a]re not imposed by or contained in the applicable [federal regulation] . . . or [d]iffer from those specifically imposed by or contained in the applicable [federal regulation]." 21 C.F.R. § 100.1(c)(4). In other words, "[s]tates can impose requirements that are identical to those imposed by the FDCA, but not different from or more burdensome than those requirements." *Harris v. Topco Assocs., LLC*, 538 F. Supp. 3d 826, 831 (N.D. Ill. 2021); *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) (claims imposing requirements that differ from or go beyond what federal law and regulations require are preempted); *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d

1186, 1195 (11th Cir. 2018) ("Assuming that Hi-Tech is right that the labeling is misleading, HBS could remedy the misrepresentation only by reducing the advertised amount of protein per serving or by redesigning its label to itemize by amount each source of 'protein' that contributes to the advertised 25 grams. But Hi-Tech has identified no provision of the Food, Drug, and Cosmetic Act or the relevant federal regulations that requires HBS to do either of those things."). The Seventh Circuit provides a helpful illustration:

> If an FDCA standard of identity said that a vegetable label must indicate the vegetable's "color, date of harvest, and common name," the preemption provision would prohibit a state from adding a further requirement that all vegetable labels also list the country of origin. The absence of such a requirement in the federal law operates to exclude it. But if a seller chose voluntarily to add a country of origin—and lied about it—then § 343-1(a)(1) would not preempt state law from requiring the seller to remove the voluntarily-added lie.

*Bell*, 982 F.3d at 485.

Plaintiff's theory is that it is misleading for Saraya to use the phrase "MONKFRUIT SWEETENER WITH ERYTHRITOL" without disclosing the exact percentage of monk fruit on in the product. But that claim is preempted, like in *Bell* or *Hi-Tech*, because compliance would require Saraya to add a further disclosure requirement that is not required by and contradicts the FDCA/NLEA, and would be more burdensome than current regulations.[9]

There are four relevant regulations.

*First*, manufacturers must list ingredients in their products on the "information panel" of the packaging, "in descending order of predominance." 21 C.F.R. §§ 101.2(b), 101.4(a)(1).

---

[9] While Plaintiff avoids alleging what the Lakanto Sweetener label should be required to say, when read as a whole, the Complaint effectively alleges that Saraya should be required to state the exact percentage of monk fruit and erythritol in the Lakanto Sweetener on the front of the package.

*Second*, the FDA has promulgated regulations governing specific disclosures regarding sugar alcohols like erythritol. *See* 21 C.F.R. § 101.9. These regulations state, in relevant part:

> "Sugar alcohol" (VOLUNTARY): A statement of the number of grams of sugar alcohols in a serving may be declared voluntarily on the label, except that when a claim is made on the label or in labeling about sugar alcohol or total sugars, or added sugars when sugar alcohols are present in the food, sugar alcohol content shall be declared.

21 C.F.R. § 101.9(c)(6)(iv).

*Third*, if a claim is made about sugar alcohols, the "[s]ugar alcohol content shall be indented and expressed to the nearest gram." *Id.*

And *fourth*, any food that claims to be helpful for reducing or maintaining weight and that uses a nonnutritive sweetener like monk fruit to help achieve weight loss must declare on its label that it contains monk fruit "but need not state the percentage by weight of the nonnutritive sweetener." 21 CFR § 105.66(b)(2). In other words, federal regulations require certain food labels to disclose that they are using a nonnutritive sweetener to reduce calories for purposes of weight loss or maintenance, but do ***not*** require disclosure of the amount of nonnutritive sweetener in the product.

Saraya has complied with these voluntary and mandatory requirements. As noted, the Ingredients List on the back of the packaging lists the two ingredients in the Lakanto Sweetener in their order of predominance, with "Erythritol" listed before "Monk Fruit Extract." As for the requirements under Section 101.9(c)(6), the Lakanto Sweetener declares that it contains erythritol, so the nutritional panel must disclose the amount of sugar alcohol in a serving and to the nearest gram. *See* 21 C.F.R. § 101.9(c)(6)(iv). Saraya's label also complies with these rules—the Nutrition Panel discloses that there are 8 grams of "Sugar Alcohol" in each serving. Compl. ¶ 22. Requiring

greater specificity as to the amount of sugar alcohol in the product would run afoul of the requirement that the amount need only be expressed to the nearest gram. *See id.* Nothing in the FDA regulations requires Saraya to list the percentage or proportion of either ingredient on the front or back of the package. *Franco v. Chobani, LLC*, 2025 WL 1530996, at *15 (N.D. Ill. 2025) ("A state law claim is preempted if it seeks to impose a new labeling requirement[.]" (citation omitted)). And requiring a separate disclosure regarding the amount of monk fruit, in addition to the existing required disclosure regarding the amount of erythritol (sugar alcohol) goes far beyond that which is already required by FDA regulations.

Finally, the FDA's regulatory scheme also states that certain food labels do ***not*** need to disclose the amount of monk fruit (or other nonnutritive sweeteners) by weight in the product. *See* 21 CFR § 105.66(b)(2). This makes sense given that stevia, monk fruit, sucralose (Splenda), aspartame (Equal), saccharin (Sweet and Low), and other nonnutritive sweeteners are well-known to be intensely sweet such that only a small amount is needed to achieve the desired level of sweetness. *Aspartame and Other Sweeteners in Food*, FDA (last updated Feb. 27, 2025), https://www.fda.gov/food/food-additives-petitions/aspartame-and-other-sweeteners-food; *High-Intensity Sweeteners*, FDA (last updated Dec. 19, 2017), https://www.fda.gov/food/food-additives-petitions/high-intensity-sweeteners. It would be contradictory to this requirement to impose upon Saraya an obligation to disclose the amount of monk fruit in its Lakanto Sweeteners, despite the fact that disclosure is not required when its sweeteners are used in *other* products.

Because Plaintiff's claims seek to penalize Saraya for failing "to *add* further labeling that is not required by federal law," they are preempted by the FDCA/NLEA. *Bell*, 982 F.3d at 487. Counts I–V should be dismissed for this additional reason.

## III. PLAINTIFF'S CONSUMER PROTECTION AND COMMON-LAW CLAIMS SUFFER FROM ADDITIONAL DEFECTS.

Even if Plaintiff has plausibly alleged that a reasonable consumer would be misled by the Products' labels (she has not), her common law and consumer protection claims remain defective.

### A. Plaintiff Has Not Alleged Cognizable Injury Under Illinois, Florida, Massachusetts, and New Jersey Law.

Plaintiff's consumer fraud claims suffer from another fatal flaw in that she cannot show actual injury resulting from the alleged false, misleading, or deceptive act. 815 ILCS 505/10a(a); Fla. Stat. Ann. § 501.211(2); Mass. Gen. Laws Ann. ch. 93A, § 9(1); N.J. Stat. Ann. § 56:8-19. In Illinois, a plaintiff's allegation that they "paid more for the products than they were actually worth . . . without any factual foundation to moor his subjective estimation of the products' worth," is "too speculative to support an inference of actual damages." *Sabo v. Wellpet, LLC*, 250 F. Supp. 3d 332, 337 (N.D. Ill. 2017); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) (conclusory assertions of actual damages are not sufficient to withstand a motion to dismiss). Courts in Florida, Massachusetts, and New Jersey have come to similar conclusions.[10]

---

[10] *See, e.g.*, *Pop v. Lulifama.com LLC*, 2023 WL 4661977, at *5 (M.D. Fla. 2023), *appeal dismissed,* 2024 WL 21403 (11th Cir. 2024), and *aff'd,* 145 F.4th 1285 (11th Cir. 2025) ("Subjective dissatisfaction does not constitute actual damages under FDUPTA."); *Broodie v. Target Corp.*, 2024 WL 3341342, at *5 (M.D. Fla. 2024) ("[I]n order to properly allege an economic injury, [a plaintiff] must plausibly allege that the Product was actually worth less than what she paid, not just that she believes it should be worth less."); *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 453 (D. Mass. 2018), on reconsideration, 370 F. Supp. 3d 204 (D. Mass. 2019) ("[C]laims of injury premised on 'overpayment' for a product, or a loss of the benefit of the bargain, require an objective measure against which the plaintiff's allegations may be evaluated and may not rest on the plaintiff's 'subjective belief' that he received a less valuable product than he paid for."); *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 12 (1st Cir. 2017) (allegation that plaintiff paid a "price premium" "as a result" of defendants' deception is, by itself, too "conclusory" and "speculative"); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011) (the failure to quantify the "difference in value between the product received and the product promised" results in dismissal).

Here, Plaintiff's allegations are too vague and speculative to support any inference of damages. At best, Plaintiff makes the bald assertions that she and the prospective class "would not have purchased the Products on the same terms if they had known the truth; they paid a price premium for the Products; and they purchased a Product that was not capable of being legally sold." Compl. ¶ 128. Plaintiff's subjective belief as to the value of the Lakanto Sweetener is, without more, insufficient to allege economic injury. *Sabo*, 250 F. Supp. 3d at 337.

Plaintiff also alludes to some harm "beyond economic injury." Compl. ¶ 79. But economic harm is a prerequisite to a suit for money damages under the ICFA. *See Camasta*, 761 F.3d at 739 ("[T]he element of actual damages [under the ICFA] requires that plaintiff suffer actual pecuniary loss."); *accord Rife v. Newell Brands, Inc.*, 632 F. Supp. 3d 1276, 1315 (S.D. Fla. 2022) (interpreting "actual damage" under the FDUTPA to require some measurable, economic harm); N.J. Stat. Ann. § 56:8-19 (requiring "loss of money or property"). Any alleged noneconomic harm also fails to state a cognizable injury under the laws of Florida, Massachusetts, and New Jersey. [11] For these additional reasons, the consumer fraud claims (Counts I and II) must be dismissed.

---

[11] Plaintiff also asserts the novel theory that, because the Products are allegedly misbranded in violation of the Illinois Food, Drug and Cosmetic Act, Plaintiff is entitled to a full refund under the ICFA. *See* Compl. ¶ 80. It is well established, however, that the ICFA provides relief in the form of damages for "*actual and real loss or injury*[.]" *Smith, Allen, Mendenhall, Emons & Selby v. Thomson Corp.*, 862 N.E.2d 1006, 1009 (Ill. App. Ct. 2006) (emphasis in original). Plaintiff's claims are governed by "the benefit-of-the-bargain rule, whereby damages are determined by assessing the difference between the actual value of the product sold and the value the product would have had at the time of the sale if the representations had been true." *Id.* What's more, Plaintiff's own allegations show that a full refund is not warranted here. Plaintiff indisputably received some benefit from the Lakanto Sweetener, as evidenced by the fact that she may want to purchase the Products again, in the future. *See* Compl. ¶¶ 59, 81, 90. Nor does Plaintiff allege any adverse effects from the products. While Plaintiff may be disappointed in the amount of monk fruit in the products themselves, Plaintiff has not alleged any facts that would allow her to recover a full refund for the purchase price; such a windfall is not the sort of remedy available under the ICFA in either an individual action or a class action in Illinois.

**B. Plaintiff's Unjust Enrichment Claim is Duplicative and Must Be Dismissed Because Plaintiff Has an Adequate Remedy at Law.**

Even if pled in the alternative, Illinois does not recognize a stand-alone cause of action for unjust enrichment. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). Instead, an unjust enrichment claim is "tied to the fate of the claim under the [ICFA]." *Id.*; *Matthews*, 2023 WL 4534543, at *10. Because Plaintiff's unjust enrichment claim is based on the same misguided theory of consumer deception, it should be dismissed as duplicative. *Compare* Compl. ¶ 116 (ICFA claim based on Sarafaya's alleged "false and misleading Representations"), *with id.* ¶ 168 (unjust enrichment claim based on Saraya's alleged "misleading Representations and omissions, enticed Plaintiff and members of the Class to purchase the Products").

Regardless, Plaintiff also fails to plausibly allege that she lacks an adequate remedy at law—a necessary requirement for the equitable theory of unjust enrichment in Illinois. *See Joseph v. TGI Friday's, Inc.*, 2022 WL 17251277, at *8 (N.D. Ill. 2022); *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 887 (7th Cir. 2022). The laws of Florida, Massachusetts, and Minnesota similarly mandate dismissal for this reason. *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012); *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 82 (1st Cir. 2020) (Massachusetts); *Cleveland v. Whirlpool Corp*., 550 F. Supp. 3d 660, 671 (D. Minn. 2021); *United States v. Bame*, 721 F.3d 1025, 1030 (8th Cir. 2013) (Minnesota). What's more, Plaintiff does not sufficiently allege an unjust enrichment claim under any other state's laws insofar as she does not allege how such claims are materially distinguishable from her failed claim in Illinois. *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1048–49 (W.D. Wash. 2025); *see Chavez v. Illinois State Police*, 251 F.3d 612, 630 (7th Cir. 2001) ("[I]f the court determines that the named plaintiffs' claims lack merit, such a decision ordinarily, though not invariably, disqualifies the

named plaintiffs as proper class representatives,' thus resolving the issue of class certification." (cleaned up)); *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."). Thus, Count V should also be dismissed.

### C. <u>Plaintiff's Negligent Misrepresentation Claim Fails Because There Is No Misrepresentation and the Claim Is Barred By the Economic Loss Doctrine.</u>

Plaintiff's negligent misrepresentation claim (Count IV) suffers from similar flaws. Negligent misrepresentation requires the plaintiff to prove, among other things, "a false statement of material fact[.]" *Matthews*, 2023 WL 4534543, at *10 (quoting *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006)). Here, Plaintiff's claim rests on the same theory as her consumer protection claims. *Compare* Compl. ¶ 117 (pleading ICFA claim based on Saraya's alleged "concealment, suppression and/or omissions of the material facts concerning the actual amount of monk fruit contained in the Products"), *with id.* ¶ 158 (basing negligent misrepresentation claim on Saraya's alleged "material misrepresentation that the Products are a 'MONKFRUIT SWEETENER'"). Because there is no "false or deceptive statement, this claim also fails." *Matthews*, 2023 WL 4534543, at *10.

Moreover, Plaintiff apparently seeks to recover purely economic losses (Compl. ¶¶ 164–65) and, as a result, cannot also recover damages under a theory of negligence. Indeed, Illinois does not permit negligence claims, like this one, that seek recovery of economic loss based on the purchase of tangible goods. *See Akers v. Costco Wholesale Corp.*, 631 F. Supp. 3d 625, 636 (S.D. Ill. 2022) (citations omitted); *Kinman v. Kroger Co.*, 604 F. Supp. 3d 720, 727 (N.D. Ill. 2022).[12]

---

[12] Illinois does recognize two exceptions to this doctrine: "for [1] intentionally false representation and [2] negligent misrepresentation while in the business of supplying information to guide others

Plaintiff does not explain how the law differs with respect to the economic loss doctrine in alleged multi-state class states. It is clear, however, that Florida, Michigan, Minnesota, New Jersey, and Washington have adopted similar rules. *See, e.g.*, *Jones v. Lubrizol Advanced Materials, Inc.*, 559 F. Supp. 3d 569, 600 (N.D. Ohio 2021) ("Michigan's economic-loss doctrine prohibits buyers from bringing tort suits against sellers for economic losses arising from the product that the parties exchanged in a commercial context."); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1338 (S.D. Fla. 2013) (similar); *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 370 (Minn. 2009) (similar); *1410 Grand Adams, LLC v. Trematore Constr.*, LLC, 2025 WL 1742859, at *9 (N.J. Super. Ct. App. Div. 2025) (similar); *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 179 Wash. 2d 84, 96, 312 P.3d 620, 626 (2013) (Washington's "independent duty doctrine" may allow for limited negligence claims, but only where a duty is alleged "independently of the contract"). Accordingly, Plaintiff's claim for negligent misrepresentation should be dismissed.

### D. Plaintiff's Express Warranty Claim Fails as a Matter of Law Because There Is No Alleged Affirmative Statement or Promise.

To state a claim for breach of an express warranty in Illinois—and those states comprising the alleged multi-state class—Plaintiff must plausibly "set out the terms of a single specific 'affirmation of fact or promise'" that Saraya made about the Lakanto Sweetener. *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 740 (N.D. Ill. 2015); *see also Matthews*, 2023 WL 4534543, at *9 (plaintiff must allege some "affirmation of fact or promise" relating to the goods and that the goods

---

in business transactions." *Akers*, 631 F. Supp. 3d at 636. Neither exception applies here. *See Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 837 (N.D. Ill. 2021) (the first exception does not apply to negligent misrepresentation claims); *Kinman v. Kroger Co.*, 604 F. Supp. 3d 720, 727 (N.D. Ill. 2022) (the second exception does not apply to "purveyor[s] of tangible products").

"fail to conform" to the same (citation omitted)).[13] Express warranty claims cannot be based on implication but rather must pertain to express representations. *See, e.g.*, *Markoff v. Athena Cosms., Inc.*, 764 F. Supp. 3d 733, 748 (N.D. Ill. 2025) (dismissing express warranty claim where "the allegations focus on the implications created by [defendant]'s omissions" and "[b]ased on the allegations, the impression . . . came less from what was said than what was left unsaid"); *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 721 (N.D. Ill. 2023) ("[P]roduct packaging with the name 'Lemon Snaps' and images of the cookies and lemons does not amount to an express warranty . . . that the product contains a certain amount of actual lemon"). Claims based on "vague images and text are not enough to establish an affirmation of fact or a promise to consumers." *Rudy*, 666 F. Supp. 3d at 721; *Baldwin*, 78 F. Supp. 3d at 740 ("recounting vague, nonspecific statements" about the challenged product's "supposed benefits" is insufficient).

Here, there is no express statement upon which a breach may be found. The Lakanto Sweetener's front label does not constitute an unequivocal promise that the Products are "substantially" comprised of monk fruit or that they contain a certain amount of monk fruit. Plaintiff therefore fails to plausibly allege that the labeling expressly warrants that the Lakanto Sweetener is substantially comprised, or contains a certain amount, of monk fruit—or that Saraya failed to comply with any warranty that the Lakanto Sweetener contains monk fruit (which it does).

---

[13] *See also* Fla. Stat. Ann. § 672.313(1)(a) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."); Mass. Gen. Laws Ann. ch. 106, § 2-313(1)(a) (same); Mich. Comp. Laws Ann. § 440.2313(1)(a) (same); Minn. Stat. Ann. § 336.2-313(1)(a) (same); N.J. Stat. Ann. § 12A:2-313(1)(a) (same); Wash. Rev. Code Ann. § 62A.2-313(1)(a) (same).

Just as Plaintiff's allegations do not support any alleged untruth relative to her consumer-protection claims, the Complaint fails to state a plausible claim for breach of express warranty (Count III).

**E. Plaintiff Did Not Comply With Pre-Suit Notice Requirements.**

Plaintiff has also failed to comply with the pre-suit notice requirements before bringing her claims for breach of express warranty (Count III) and under the Massachusetts Consumer Protection Act (Count II). These claims should be dismissed for this additional reason.

**1. Plaintiff failed to provide pre-suit notice of her express warranty claim.**

A buyer who discovers a breach of warranty must notify the seller "or be barred from any remedy." 810 ILCS 5/2-607(3)(a). The purpose of this rule is to "encourage settlement and allow sellers to cure defects and minimize damages." *Cerretti v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 1062793, at *5 (N.D. Ill. Apr. 8, 2022). Failure to give proper notice undermines this purpose and requires dismissal with prejudice. *Counts v. Arkk Food Co.*, 2023 WL 7281851, at *5-6 (N.D. Ill. 2023); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 761 (N.D. Ill. 2015).[14] There are two exceptions to Illinois' notice requirement: (1) when a plaintiff alleges a physical injury, or (2) when the defendant had actual knowledge of the product's defect. *Ibarrola*, 83 F. Supp. 3d at 760. Neither exception applies here.

Plaintiff has not alleged personal injury and Saraya was not aware of Plaintiff's specific concerns until this lawsuit was initiated. *Reyes v. Mcdonald's Corp.*, 2006 WL 3253579, at *3 (N.D. Ill. 2006) (the notice requirement "is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer"). The

[14] *Accord* Fla. Stat. Ann. § 672.607; Mass. Gen. Laws Ann. ch. 106, § 2-607(3)(a); Mich. Comp. Laws Ann. § 440.2607(3)(a); Minn. Stat. Ann. § 336.2-607(3)(a); Wash. Rev. Code Ann. § 62A.2-607(3)(a).

Complaint makes passing reference (at ¶ 151) to a "pre-suit notice" that counsel provided to Saraya. But this letter did not supply any pre-suit notice of Plaintiff's particular claim. Instead, counsel sent Saraya a letter indicating that they intended to file a different suit in a different state on behalf of a different plaintiff. Letter from Naomi Spector, KamberLaw LLP, to Saraya, et al. (Feb. 11, 2025), attached at **Exhibit 3**.[15] The letter did not mention (1) Illinois, (2) Kinman, or (3) a claim for breach of express warranty. *Id.* This is insufficient to put Saraya on notice of the breach of express warranty claim in Illinois. *Cerretti*, 2022 WL 1062793, at *6 (defendant's knowledge that other plaintiffs have alleged defects regarding the same type of product is "not the kind of knowledge that can excuse pre-suit notice under Illinois law"); *Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 971 (N.D. Ill. 2025) ("[S]ettlement talks between counsel don't count as notice because they discussed the claims of a class, not the claims of the Gurrolas in particular."). Because Plaintiff never gave pre-suit notice of her Illinois express warranty claim—as alleged by Plaintiff in her individual and representative capacities—it should be dismissed with prejudice. This failure cannot be cured and Plaintiff has otherwise made no attempt to provide proper notice even after this defect was argued in Defendant's initial motion to dismiss this action (before it was transferred to this district).

**2. Plaintiff failed to provide pre-suit notice under the Massachusetts Consumer Protection Act.**

The Massachusetts Consumer Protection Act states that plaintiffs must provide, "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the

[15] The Court may consider documents, like the notice, "referred to in the complaint" that are "central to the plaintiff's claim" in deciding a motion to dismiss. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir. 1997). Because the notice is critical to certain of Plaintiff's claims, Compl. ¶ 151, it should be considered in ruling on Saraya's Motion.

claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered[.]" Mass. Gen. Laws Ann. ch. 93A, § 9(3). The demand letter "is a prerequisite to suit and as a special element must be alleged and proved." *Hill v. AQ Textiles LLC*, 582 F. Supp. 3d 297, 320 (M.D.N.C. 2022); *Passatempo v. McMenimen*, 461 Mass. 279, 960 N.E.2d 275, 293 (2012) (affirming dismissal of a Chapter 93A claim where the demand letter "did not mention [defendant's] name and failed to identify or describe any unfair or deceptive act or practice"). This requirement applies equally in class actions. *See Hill*, 582 F. Supp. 3d at 320 ("In the class action context, proper demand made by one plaintiff satisfies this requirement for 'others similarly situated,' so long as the letter (1) identifies him as the claimant, (2) reasonably describes the act or practice being challenged, and (3) reasonably describes his injury.").

As noted, at no time prior to the filing of the instant action did Plaintiff provide Saraya with the requisite demand letter identifying Plaintiff or any of her claims, nor does Plaintiff allege to have complied with the specific requirements of Massachusetts law. To the extent Plaintiff's Massachusetts consumer fraud claim is not dismissed on other grounds (as it should be), Plaintiff's failure to satisfy the statutory notice requirement also warrants dismissal.

## IV. PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF AND BRING CLAIMS UNDER THE LAWS OF STATES WHERE SHE SUFFERED NO INJURY.

The requirements for standing do not change in the class action context. *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Courts may not resolve questions in the abstract; rather, they are empowered only to resolve specific disputes that have practical consequences for the parties involved. *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011). To comply with this constitutional limitation, "a plaintiff must demonstrate that (1) he or she has

suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The burden to establish standing rests with the plaintiff. *Lujan*, 504 U.S. at 561.

Each plaintiff must "demonstrate standing for each claim he seeks to press" and "for each form of relief" sought. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Plaintiff cannot meet that burden here. That is, she lacks standing to pursue injunctive relief—and she also lacks standing to pursue claims brought under the laws of states in which she did not suffer any injury.[16]

**A. <u>Plaintiff Lacks Standing to Seek Injunctive Relief.</u>**

To have standing to seek injunctive relief, "the [named Plaintiff] must be suffering a continuing injury or be under a real and immediate threat of being injured in the future."[17] *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) (citation omitted). "The threatened injury must be 'certainly impending' and not merely speculative." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000)). In consumer-fraud cases, plaintiff's awareness of the alleged misrepresentation necessarily makes any future harm "merely speculative." *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prods. Liab. Litig.*, 2023

---

[16] Courts should address Article III standing at the beginning of litigation and in the context of a Rule 12(b) motion. *See Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011). It is "a threshold issue that 'determine[s] the power of the court to entertain the suit.'" *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331, at *7 (D. Colo. July 14, 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Determining standing at the outset prevents plaintiffs from engaging in costly and protracted discovery regarding alleged violations of state laws when it is uncertain that any individual actually "suffered an injury under those laws." *Id.* at *9.

[17] In a diversity action such as this one, the law of Illinois governs the merits of Plaintiff's claims. *See Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 2015 WL 12600327, at *11 (D. Utah Aug. 31, 2015). But the law of this district and the Tenth Circuit governs procedural concerns as well as issues of prudential standing. *Id.*

WL 6121894, at *136 (D.N.M. Sept. 19, 2023) (refusing to certify California class because named plaintiff lacked standing to bring claims for injunctive relief); *see also Baca v. Colo. Dep't of State*, 935 F.3d 887, 911 (10th Cir. 2019), *rev'd on other grounds*, 140 S. Ct. 2316 (2020)) ("Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present, adverse effects."); *In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*, 718 F. Supp. 3d 800, 810 (N.D. Ill. 2024) (similar; collecting cases).

Here, Plaintiff alleges she is now aware the Lakanto Sweetener contains significantly more erythritol than monk fruit. Compl. ¶ 32 ("According to the results of the scientific testing, the [the Lakanto Sweetener] contain[s] 98.85% erythritol."). Plaintiff is also aware of the Ingredients List which states the Lakanto Sweetener contains "Erythritol, Monk Fruit Extract," with Erythritol listed first. *Id.* ¶ 23 n.2. Based on these allegations, Saraya's labeling is not likely to continue misleading Plaintiff, "despite [her allegations] that it will continue to mislead reasonable consumers." *Santa Fe Tobacco*, 2023 WL 6121894, at *136. Accordingly, any future harm to Plaintiff resulting from Saraya's labeling practices is merely speculative, requiring dismissal of her claim for injunctive relief (Count I).

### B. Plaintiff Lacks Standing to Assert Claims Under the Laws of States Where She Suffered No Injury.

A plaintiff who purchased a product in one state lacks standing to assert claims under the laws of states where they neither purchased the product nor suffered any injury. *See Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1225 (W.D. Okla. 2008) (finding plaintiff lacked standing to bring claims under the laws of states where he was not injured). "Otherwise, a plaintiff would be able to bring a class action complaint under the laws of nearly every state in the Union

without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery, potentially without a good-faith basis." *Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 148 (D.N.J. 2025) (citation omitted).

Courts within the Tenth Circuit have addressed this issue numerous times, with the weight of authority holding that a named plaintiff lacks standing to assert claims under the laws of states in which the plaintiff did not reside or suffer injury. *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331, at *8 (D. Colo. July 14, 2011); *see Clark v. Strad Energy Servs., USA, Ltd.*, 2018 WL 3647922, at *5 (D. Colo. Aug. 1, 2018) ("[P]laintiff lacks standing to bring class claims on behalf of a class under the laws of states to which plaintiff has never been subject or where plaintiff has never resided."). Following these principles, courts routinely dismiss claims brought under the laws of another state in which there is no named plaintiff who suffered any injury within that state. *See In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1311 (D. Kan. 2018) (dismissing "antitrust state law claims for which the Class Complaint includes no **named plaintiff** from that state") (emphasis in original); *Valverde v. Xclusive Staffing, Inc.*, 2017 WL 3866769, at *7 (D. Colo. Sept. 5, 2017); *Hunnicutt v. Zeneca, Inc.*, 2012 WL 4321392, at *5 (N.D. Okla. Sept. 19, 2012) ("[N]amed plaintiffs generally lack standing to assert class-wide claims under laws of states with which they have no connection."); *Self v. TPUSA, Inc.*, 2009 WL 273326, at *2 (D. Utah Feb. 4, 2009) (dismissing state-law claims for states in which plaintiffs did not have a named plaintiff).

This authority makes clear that Plaintiff has no standing to assert claims under the laws of states where she does not reside and did not purchase the Products. Plaintiff alleges purchases solely in Illinois yet seeks to assert state-law claims on behalf of putative classes from Florida,

Massachusetts, Michigan, Minnesota, New Jersey, and Washington. Plaintiff cannot escape Article III's standing requirement by assuming that proper putative class representatives may be joined in the future—particularly when this action has now been pending for eight months and no additional plaintiffs have been named. Accordingly, Plaintiff's claims should be dismissed to the extent they are brought under the laws of states other than Illinois.

## V. STATUTORY DAMAGES ARE NOT AVAILABLE FOR PLAINTIFF'S CONSUMER PROTECTION CLAIMS.

Plaintiff's Prayer for Relief includes a request for "statutory damages;" however, the Complaint does not specify a statute or cause of action that would entitle Plaintiff to recover such damages. To the extent Plaintiff seeks statutory damages in connection with Count 1 or Count 2, the Massachusetts Consumer Protection Act is the only statute that arguably allows for the recovery of such damages in the class action context. Mass. Gen. Laws Ann. ch. 93A, § 9(3) (authorizing the recovery of "actual damages or twenty-five dollars, whichever is greater"). Although individual plaintiffs may recover statutory damages under Michigan's Consumer Protection Act, class action plaintiffs may only recover actual damages. *Compare* Mich. Comp. Laws Ann. § 445.911(2), *with id.* § 445.911(4). As explained above, Plaintiff lacks standing to assert damages under other states' laws but, except for the Massachusetts subclass, such damages are otherwise plainly disallowed. Moreover, the failure of Plaintiff's ICFA claim precludes any claims on behalf of a Massachusetts (or other state) class. *See Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015).

/ / /

**CONCLUSION**

For the foregoing reasons, Saraya respectfully requests that the Court dismiss Plaintiff's claims set forth in the Complaint with prejudice.

DATED March 11, 2026

*/s/ Juliette P. White*
Juliette P. White
Leah C. Schwartz
**PARSONS BEHLE & LATIMER**

Attorneys for Defendant SARAYA USA, INC.